UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURE CAM, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TEND INSIGHTS, INC.,<br><br>　　　　　Defendant. | Case No. 5:18-cv-02750-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Plaintiff Secure Cam, LLC ("Secure Cam" or "Plaintiff") brings this action for patent infringement against Defendant Tend Insights, Inc. ("Tend Insights" or "Defendant"). Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 35 U.S.C § 101. Dkt. No. 24 ("Mot."). Defendant asks this Court to find the asserted patents invalid for failure to claim patent-eligible subject matter. Having considered the submissions of the parties and the comments of counsel at the hearing, the Court grants Defendant's Motion to Dismiss.

## I. BACKGROUND

### A. The Parties

Plaintiff Secure Cam is a Wyoming limited liability company with its principal place of business in Sheridan, Wyoming. Dkt. No. 1 ("Compl.") ¶ 2. Plaintiff is the owner, by assignment, of U.S. Patent Nos. 8,531,555 ("the '555 Patent"), 8,350,928 ("the '928 Patent"), 8,836,819 ("the '819 Patent") and 9,363,408 ("the '408 Patent") (collectively, the "Patents-in-Suit"). *Id.*, Exs. A-D. Defendant Tend Insights is a California corporation with its principal place of business in Fremont, California. *Id.* ¶ 3.

**B. The Patents-in-Suit**

The Patents-in-Suit are all entitled "Method and Apparatus for Automatically Categorizing Images in a Digital Camera." Compl. Exs. A-D. The application of the '555 Patent is a continuation of the patent application that issued as the '928 Patent, and thus the two patents share the same specification. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1337 (Fed. Cir. 2006) ("The patents are continuations or divisionals of a common parent application and therefore necessarily have almost identical specifications."). Similarly, the application for the '819 Patent is a continuation of the patent application that issued as the '555 Patent and the '408 Patent is a continuation of the patent application that issued as the '819 Patent. For simplicity, unless referring to a specific patent, the Court's citations to the text and figures of the Patents-in-Suit refer to the '928 Patent.

The Patents-in-Suit relate to "[a] system and method for the automatic analysis and categorization of images in an electronic imaging device." '928 Patent at Abstract. All the asserted claims recite a system or method for automatic analysis and categorization of images that involves three components: 1) an imaging device, 2) a system bus and 3) a camera computer. *See* '555 Patent, 3:46-49; '928 Patent, 3:55-58; '819 Patent, 3:47-50; '408 Patent, 3:52-54. Figure 1 illustrates the interaction between these three components:



FIG. 1

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
2

Figure 10 illustrates the process of analyzing and categorizing the images:



This process begins when the camera captures an image as charged-couple device (CCD) data, stores the data into an image file, and then propagates the image file through the camera for processing and formatting of the image data. '928 Patent, 7:42 – 8:4. Next, image processing modules replace any defective pixels in image data, perform white balance color correction on the image data, and perform interpolation (edge enhancement) on the image data. *Id.* The processing module then converts the image data into an intermediate format, such as an RGB (Red, Green, Blue) format. *Id.* Analysis modules then analyze the image data at an RGB transition point. *Id.*, 7:56-64. Once an analysis module analyzes the final line of image data, the analysis module generates any appropriate image tags and stores the generated tags into a blank category tag location in the image file. *Id.* The camera may then access these stored tags to automatically categorize and utilize the individual stored images. *Id.*

The asserted independent claims generally follow this process. For example, Claim 1 of the '928 Patent recites:

1. A digital camera for automatically categorizing captured image data, the digital camera comprising:

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
3

       a processor within the digital camera for capturing image data;

       an analysis module within the digital camera coupled to the processor and configured to perform image data analysis on the captured image data at the time of image capture by the digital camera and to automatically generate, responsive to the preformed image data analysis, a category tag for the captured image data; and

       a memory for storing the generated category tag in association with the captured image data for categorizing the captured image data.

'928 Patent, 9:4-16.

## II.   LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. Los Angeles*, 828 F. 2d 556, 561 (9th Cir. 1987). To survive a Rule 12(b)(6) motion, the plaintiff must allege facts sufficient to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).

Additionally, to state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Internet Patents Corp. v. Gen. Auto. Ins. Servs.*, 29 F. Supp. 3d 1264, 1267 (N.D. Cal. 2013) (quoting *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)). The court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

4

## B. Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has recognized that these broad categories contain an implicit exception: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 133 S. Ct. 2107, 2116 (2013) (internal quotation marks and citation omitted). In applying this exception, courts "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014).

To determine whether a claim falls within the "abstract idea" exception, the Supreme Court has established a two-step framework. First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 2355. Second, if the claims are directed to patent-ineligible subject matter, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012)). The Supreme Court has described this as a "search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.*

## III. DISCUSSION

Defendant contends that for purposes of a Section 101 analysis, the Patents-in-Suit contain only minimal differences and the method claims are representative of at least the other independent claims in their respective patents. Mot. 2. Plaintiff disagrees, contending that although the claims share similarities, it is improper to assume they are representative of each other. The Court agrees that with minor differences, the claims of all the Patents-in-Suit are similar. As a result, none of the asserted claims warrants a materially different Section 101

analysis or result. Accordingly, the Court will consider them collectively using Claim 1 of the '928 Patent as the representative claim.

*A.     Step One*

At step one of the *Alice* analysis, the Court looks to the 'character as a whole' of the claims to determine whether it is directed to an abstract idea. *Alice*, 134 S.Ct. at 2355; *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1335 (Fed. Cir. 2016). "The 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish,* 822 F.3d at 1335 (quoting *Internet Patents Corp.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). At some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71. Thus, Courts must tread carefully when assessing a claim's "character as a whole" and avoid "describing the claims at such a high level of abstraction and untethered from the language of the claims [because that] all but ensures that the exceptions to § 101 swallow the rule." *Enfish,* 822 F.3d at 1337.

Here, the focus of the claims is on collecting digital images, analyzing them and categorizing them. An analysis module within the digital camera performs image data analysis on the image at the time of image capture, automatically generating a category tag for the captured image. '928 Patent, 9:8-13. The analysis module includes text category lists, combination logic, analysis algorithms and parametric control. *Id.*, Fig. 7, 9:16-24. The specification describes a text category list as a listing of various possible categories available for a given module. '928 Patent, 6:25-26. Combination logic determines how to resolve the results of the image analysis when multiple analysis algorithms are utilized. *Id.*, 6:27-29. The analysis module runs a series of analysis algorithms designed to allow the module to access and analyze images to detect at least one image category tag. *Id.*, 6:34-41. Claim 4 of the '555 Patent recites that the category tag associated with an image can comprise a "person, group of people, nature scene, cityscape, waterscape or indoor image." '555 Patent, 9:8-10. The analysis module can generate capture information tags, which may indicate focus setting, aperture setting and other relevant information

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

6

that may be helpful in processing image data. '928 Patent, 7:12-32.

The Federal Circuit has found that claims directed at collecting information, analyzing it, and displaying results of the collection are focused on an abstract idea. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing cases). The Federal Circuit explained that information is intangible, and hence abstract. *Id*. Accordingly, "collecting information, including when limited to particular content," is "within the realm of abstract ideas." *Id*. Further, the Federal Circuit has treated "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Id*. at 1354. And merely presenting the results of abstract processes of collecting and analyzing information, without more, is also abstract "as an ancillary part of such collection and analysis." *Id*.

Consistent with these principles, in *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 613 (Fed. Cir. 2016), the Federal Circuit found claims directed to "classifying and storing digital images in an organized manner" were abstract. In *TLI*, the claims sought "to provide for recording, administration, and archiving digital images simply, fast and in such [a] way that the information [ ] may be easily tracked." *Id.* at 612. More specifically, the invention involved "manually or automatically assigning 'classification data,' such as a date or a timestamp, to digital images and sending those images to a server." *Id*. at 610. The server then extracted the classification data and stored the digital information. *Id*. The Federal Circuit found that "the specification did not describe a new telephone, a new server, or a new physical combination of the two." *Id*. at 612. Nor did the invention provide a solution to any problem, such as how to append classification information to the data. *Id*. Rather, the claims were directed to the use of conventional or generic technology in a well-known environment. *Id.* For these reasons, the Federal Circuit also held that the claims in *TLI* were not directed to a solution to a "technological" problem, and instead were simply directed to the abstract idea of classifying and storing digital images in an organized manner. *Id.* at 613.

The holding in *TLI* compels the conclusion in the present case that the claims at issue are

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

7

United States District Court
Northern District of California

similarly directed to the abstract idea of analyzing and automatically categorizing digital images. Like the representative patent in *TLI*, the Patents-in-Suit describe physical components such as a digital camera, but the physical components "merely provide a generic environment in which to carry out the abstract idea." *Id*. at 611.

In response, Plaintiff asserts that the claims are directed to "a particular improvement in computing specifically in regard to digital analysis and categorization." Dkt. No. 25 at 1. Plaintiff asserts that the Patents-in-Suit describe a new digital camera with analysis modules capable of implementing software routines for analyzing and automatically categorizing images, representing an improvement over what existing digital cameras can do. Plaintiff asserts that specialized software built into the camera enables the camera to tag an image based on different algorithms and categorization factors.

Plaintiff's argument is unpersuasive. Contrary to Plaintiff's assertions, the claims at issue do not describe a specific improvement to digital camera functionality. Rather the claims at issue describe "conventional or generic technology in a nascent but well-known environment." *Id.* at 612. The digital camera, processor and memory identified in the Patents-in-Suit are described in conventional and generic terms. The remaining element—the analysis module—is described in purely functional terms as a component configured to perform image data analysis and to automatically generate a category tag. This description of the analysis module is no different from the vague description of the server in *TLI* that the Federal Circuit found patent-ineligible. *Id*. at 613 ("The server A includes ... [a] receiving unit EE for receiving the data sent from the telephone unit TE ... and an analysis unit AE ... which extracts the classification information from data received by the server S.").

The cases relied upon by Plaintiff are distinguishable because the claims at issue in those cases were directed to specific technological improvements rather than mere abstract ideas. In *Enfish*, the Federal Circuit held that the self-referential table recited in the claims was a specific type of data structure designed to improve the way a computer stores and retrieves data in memory. *Enfish,* 822 F.3d at 1339. In *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

8

F.3d 1356, 1363 (Fed. Cir. 2018), the Federal Circuit held that the claims recited a specific improvement to a user interface for computing devices and were not directed to an abstract idea. In *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-60 (Fed. Cir. 2017), the Federal Circuit found claims relating to an improved computer memory system with programmable operational characteristics defined by the processor were not directed to the abstract idea of categorical data storage. In *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1304-05 (Fed. Cir. 2018), the Federal Circuit held that claims directed to a "behavior based" approach to virus scanning pioneered by Finjan were not abstract. Unlike traditional "code-matching" systems, which simply look for the presence of known viruses, "behavior-based" scans analyzed the downloadable code and determined whether it performed potentially dangerous operations. *Id*. By contrast and unlike the cases relied upon by Plaintiff, the claims at issue in the instant action are not directed to a specific technological improvement.

The Court concludes at step one of the *Alice* framework that the claims of the Patents-in-Suit are directed to an abstract idea.

B. *Step Two*

In evaluating step two, courts must "consider the elements of each claim both individually and 'as an ordered combination'" and assess whether there are additional features in the claim that constitute an "inventive concept." *Alice*, 134 S.Ct. at 2357. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 613.

Here, the claims at issue recite only generic, conventional computer components such as a processor and memory. Nothing in the claims calls for any specific kind of computer architecture, component or data structure. In fact, the '928 Patent makes clear that the invention could be implemented on a wide range of hardware. *See* '928 Patent, 1:32-47. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S.Ct. at 2358.

The analysis module also fails to provide an inventive concept because it is simply a

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
9

generic component that analyzes and categorizes digital images. To be patent eligible, the components must involve more than the performance of "well-understood, routine, [and] conventional activities previously known to the industry." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 613 (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)). The claimed analysis module in the patents-in-Suit is simply a substitute for the human effort it would take to analyze and categorize images.

That the claims at issue identify a digital camera does not save the claims. Like the telephone unit in *TLI*, the digital camera "simply provides the environment in which the abstract idea" of collecting, analyzing and categorizing digital images is carried out. *Id*. at 614; *see also Elec. Power Grp.*, 830 F.3d at 1354 ("[L]imiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core.").

In sum, the physical components described in the claims do not add an inventive concept. The Federal Circuit has observed that "there is an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them." *Id.*, 830 F.3d at 1356. The Patents-in-Suit describe the ends sought—analyzing and automatically categorizing digital images—without offering a particular inventive means of achieving this result.

### C. CONCLUSION

Because the Patents-in-Suit are directed to patentable ineligible subject matter under Section 101, Defendant's Motion to Dismiss is GRANTED. The Complaint is DISMISSED WITHOUT LEAVE TO AMEND. Judgment will be entered in favor of Defendant and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: November 14, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-02750-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

10